NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-500

ADAM JAMES BRADLEY

vs.

WILLIAM A. LISANO[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this case, appellant Adam James Bradley appeals from the judgment dismissing his complaint filed against the Commonwealth and several employees of the Lowell District Court:  clerk-magistrate William A. Lisano; assistant clerk-magistrate Pamela J. Edward; and a clerk, of unknown name, but denominated John Doe (collectively, clerk's office defendants).

We review a motion to dismiss allowed under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), de novo.  Lanier v.

___

[1] Individually and as clerk-magistrate of the Lowell District Court.

[2] Pamela J. Edward, assistant clerk-magistrate of the Lowell District Court; John Doe, a clerk of the Lowell District Court; and the Commonwealth of Massachusetts.  Defendants Edward and Doe were sued in their official and individual capacities.

President & Fellows of Harvard College, 490 Mass. 37, 43 (2022). We must accept all the allegations of the complaint as true, and dismissal is appropriate only where the plaintiff has failed to state a claim upon which relief can be granted. See id. See also Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

Facts. We take the facts, therefore, from the complaint. Bradley is an incarcerated person serving a life sentence at the North Central Correctional Institute. He submitted to Lisano a written request, pursuant to Rule 2(b) of the Uniform Rules on Public Access to Court Records, Trial Court Rule XIV (2016) (Uniform Rules), seeking search warrant numbers for a particular time period as well as material related to a search warrant that issued as part of the criminal investigation resulting in his conviction and incarceration.

The copy of the request attached to the complaint made clear that the request was pursuant to Rule 2 of the Uniform Rules. In the request, Bradley sought what he referred to as an "independent record" maintained by the clerk's office (separate from the warrant application, affidavit, and return), which recorded the actual date on which the application, affidavit, and return were physically brought into the court "to be filed/recorded/documented." Bradley also sought "any other independent record or information separate from the [search warrant] application, affidavit, and return purporting to show

2

specific names and times as to who were the person[s] to physically bring [these items] into court," along with all search warrant application numbers for a specific time period.

In the complaint, Bradley alleged that although he was "unsure [of] the exact name of the records he [sought]," he understood that the defendants "maintain[ed] sep[a]rate court records from the actual search warrant documents, whether in a sep[a]rate log, index, document, hard copy or electronic data format detailing information as to exactly when the search warrant application affidavit and return [were] actually brought in and filed in court."

As alleged in the complaint, neither the clerk-magistrate, nor any other member of the clerk's office, provided the information that Bradley requested. Bradley subsequently submitted four more requests to the same effect. He received no response to the first four requests. Bradley asserted his belief that Lisano, through clerk Doe, responded after the fifth request, not by providing the records or addressing the merits of the requests, but instead by "implicitly informing [Bradley] to . . . talk to his appellate counsel." Bradley also alleged that he sent the clerk's office defendants letters and e-mail messages seeking information about his requests, all of which received no response.

3

Over eight months after his initial request, Bradley mailed the clerk's office a document entitled "motion requesting court to order clerk to provide Adam Bradley with dates on which warrant application, affidavit, and return was physically brought to court" (motion). The motion was captioned "In re search warrant issued on July 7, 2012 on application of Trooper Anthony DeLucia." The text of the motion contained citations to the Uniform Rules and asked the court to provide the information described above, except for the search warrant numbers. Although the motion was not verified, a copy was attached as an exhibit to the complaint. In a passage of the motion that seems at variance with Bradley's assertion that he received no response from the clerk's office except after filing the fifth request, Bradley asserted that "[e]very attempt [he] makes with [the] Clerk to obtain the actual filing dates, the Clerk's answer is non-responsive to [his] request either telling [him] to take the issue up with his Attorney, or that the date is on the [search warrant]," a copy of which was in his possession. Bradley further asserted in the motion that he "does not want the dates that [are] signed on the Physical [search warrant], he wants the [search warrant's] actual filing dates logged and documented by this court/clerk's office." In his complaint, Bradley asserted that the clerk's office refused to forward the motion to a judge for consideration.

4

In September 2021, Bradley filed the complaint in which he alleged twelve distinct claims.[3]  Some were claims for money damages against the clerk's office defendants in their individual capacities.[4]  Others were claims seeking injunctive relief, mandamus, see G. L. c. 249, § 5, and declaratory relief against all the defendants, in both their individual and official capacities.

Discussion.  1.  Uniform Rules.  Some background about the Uniform Rules is in order.  Rule 1(b) of the Uniform Rules states,

> "[t]hese rules govern access to the court records of the Trial Court.  These rules apply to all court records, regardless of the physical form, method of recording, or method of storage, subject to these rules and the technological capacity of the Trial Court to make such a court record available."

Rule 1(e) of the Uniform Rules defines "[c]ourt record" as "all or any portion of court papers, documents, exhibits, orders, recordings, dockets, and other records that are made, entered,

---

[3] It contains only eleven counts, but one has two claims subsumed within it.

[4] These included claims for conspiracy to violate, and actual violation of, Bradley's common-law right to access public court records; multiple theories for violations of 42 U.S.C. § 1983 based on violations of Bradley's First Amendment and equal protection rights; violations of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H, 11I; and intentional infliction of emotional distress.

filed, and/or maintained by the Clerk in connection with a case or proceeding."

The Uniform Rules provide an independent right of access for all members of the public beyond the rights of a criminal defendant to information about their case. Rule 2(b) of the Uniform Rules provides that "[a]ny member of the public may submit to the Clerk at a courthouse a request to access a court record . . . . The requester shall not be required to disclose the reason for the request." Rule 2(d)(1) of the Uniform Rules states, "The Clerk shall respond promptly upon receipt of a request for access to a court record." There is no requirement of acting through counsel.

The defendants argue that the data sought in this case "are not judicial records." They argue that this data are "never filed." But this reads the plain language of the Uniform Rules too narrowly. As the language quoted above states, court records include records that are "made, entered, filed, and/or maintained by the Clerk in connection with a case or proceeding." Rule 1(e) of the Uniform Rules. Any such item is a public record subject to disclosure, see Rules 1(b), 1(c), 2(a), and 2(d)(1) of the Uniform Rules, unless it is "[p]rohibited from public disclosure," Rule 1(e) of the Uniform Rules, which the defendants do not argue.

When a person requests a record, they are entitled to see the information described, or to receive from the clerk's office something that is responsive, by reference to the Uniform Rules, to their request. We think this is required by Rule 2(d)(1) of the Uniform Rules. That does not mean the clerk must necessarily provide the information requested; for example, the clerk must first determine that the requested records are not impounded or otherwise "prohibited from public disclosure." Rule 2(d)(1) of the Uniform Rules. Likewise, under Rule 2(c) of the Uniform Rules, "[t]he Clerk may set reasonable limits on the time, location, volume, and manner of access to protect the integrity of the court record and to prevent undue disruption to the operations of the Clerk's office." But the clerk's office must provide the requested information, or an explanation for its refusal to provide the requested information, that is allowed by the Uniform Rules.[5]

Court clerks' offices serve the public, and we have a difficult time imagining what legitimate interest of the clerk's office or the court could be served by failing to respond

---

[5] The defendants assert that the search warrant itself is impounded, and therefore Bradley has no right of access to it. We have no information about the impoundment order or its scope, but in any event it is irrelevant. Bradley was explicitly clear in his request that he did not seek the warrant application, affidavit, or return itself.

7

promptly to a request for a public record as required by Rule 2(d)(1) of the Uniform Rules.

The Commonwealth argues that the defendants are not subject to a mandamus or injunctive action for failure to respond to a public records request under the Uniform Rules because responding is discretionary. As Rule 2(d)(1) of the Uniform Rule states, it is not. The defendants also argue that they are entitled to judicial immunity. Although we need not address such immunity with respect to all the various claims in this case, mandamus and injunctive claims seeking to compel the clerk of a court to follow its rules are not barred by judicial immunity; an individual may properly seek relief in the nature of mandamus to compel a clerk of the trial court to comply with its rules. See, e.g., Zatsky v. Zatsky, 36 Mass. App. Ct. 7, 12-13 (1994). See also Caggiano v. Commonwealth, 406 Mass. 1004, 1005 (1990) (referring mandamus request to single justice for disposition). And the Supreme Judicial Court has entertained suits in which both injunctive and mandamus relief have been ordered against a government official. See Johnson v. Commissioner of Pub. Safety, 355 Mass. 94, 95 (1968).

Of course, mandamus is a last resort, and before mandamus (or equivalent injunctive relief) can be sought the plaintiff must seek alternative routes of redress. As we said in Zatsky,

36 Mass. App. Ct. at 12-13, which involved somewhat similar circumstances to the present case,

> "If an appellant experiences delay in assembly of the record, a pragmatic first step is to report the problem to the clerk of the Appeals Court, the court with which the appeal would lodge in the first instance. Often a clerk to clerk (or, in this case, register of probate) communication may produce the desired expedition. The next steps, as in the case of judge delay, would be a request for intervention by the chief judge of the trial court concerned, invocation of the superintendency powers of the Supreme Judicial Court, and mandamus. A party may also bring a motion before a single justice of the Appeals Court either to compel a clerk or register to assemble a record promptly or to waive assembly of the record as a prerequisite to entering the appeal."

Filing a motion with the court so that a judge may determine what the clerk's office is required to do would be an appropriate, "pragmatic" first step. Zatsky, 36 Mass. App. Ct. at 12. Such a motion must be provided to a judge for disposition. It need not set forth the docket number of some other case; it is not a filing in any other case. And the clerk's office may give it a docket number or take any other procedural steps as a matter of internal operation of the office to allow it to be properly filed and delivered to a judge for consideration. Again, a clerk's office accepting for filing a motion like the one in this case (that is otherwise in compliance with the Uniform Rules), and delivering it to a judge, are not discretionary acts.

9

2.  This case.  Whether the Uniform Rules were violated, which is the basis of this case, thus turns on whether Bradley received an adequate response to his request under Rule 2(d)(1) of the Uniform Rules.  Although his complaint stated that legal conclusion, the question is what facts were alleged.  Bradley alleged he received no response until his fifth request.  With respect to his fifth request, the complaint said, "It is Plaintiff's belief, that, Lisano through clerk Doe had responded to this request, implicitly informing Plaintiff to otherwise talk to his appellate counsel and did not respond by providing any records requested."  Of course, "[f]or purposes of surviving a motion to dismiss, . . . a party may allege facts based on 'information and belief,' . . . and we assume the truth of such allegations."  Polay v. McMahon, 468 Mass. 379, 383 n.5 (2014).  Here, however, the allegation is that clerk Doe responded in a way that "implicitly" meant that Lisano was telling Bradley to talk to his lawyer.  Because Bradley fails to state what clerk Doe's actual response was, we conclude that this allegation fails to support a judgment in Bradley's favor.  Consequently, we agree with the motion judge that the complaint fails to state

a claim upon which relief can be granted, and we affirm the judgment dismissing the complaint.[6]

Judgment affirmed.

By the Court (Rubin, Neyman & Tan, JJ.[7]),

*Paul Little*

Clerk

Entered:  October 27, 2025.

---

[6] Nothing stated herein precludes Bradley from renewing his request to the clerk's office to provide the information he seeks under Rule 2(b) of the Uniform Rules.  We trust the clerk will respond appropriately in light of our outline of the law in this area, either by providing the information, or explaining why, under Rule 2(d)(1) of the Uniform Rules, he is not required to do so.  We express no opinion on that question.  Should Bradley continue to receive what he believes is no response or an inadequate response from the clerk under the Uniform Rules, nothing prevents him from filing a motion as he did here, seeking a judicial order that the clerk's office follow the Uniform Rules.  Again, without expressing any opinion on the possible merits of such a motion, we trust the clerk's office will accept any such motion for filing and deliver it to a judge for disposition.  Finally, nothing precludes Bradley from refiling a suit such as this should the clerk's office in fact fail to respond to his requests or fail to forward to a judge for disposition any motion Bradley files seeking relief.

[7] The panelists are listed in order of seniority.

11